Gist filed his bill to set aside a sale made by a sheriff, of four hundred acres of land, by virtue of an *119 execution against him. He held the land by a and certificate assigned to him, not having obtained a patent, and gave it up to be sold. It contained quantity of four hundred acres, lying adjoining the tract on which he resided, and divided from it only by a line passing, as he alleges, very near his dwelling, hut as his adversaries allege, at the distance of forty or fifty poles. He charges, that the land was worth one thousand dollars or more, then, and now, far more* and that the sheriff, without advertisement or previous notice, took the purchaser by fraud and collusion, upon the land, without any other person present, and there, in the woods, secretly sold and assigned the plat and certificate, for one dollar only, and the purchaser thereupon obtained the grant. He makes the sheriff- and purchaser both defendants; charges fraud and collusion between them, in divers ways, and puts to them numerous interrogatories, calculated to extract the true history of the case, and alleges a joint interest in them, in the land, and prays a conveyance the title, and the possession, after having explicitly charged them with calling at his house on the day the sale, then on their way to execute it, and never suggesting to him, that the land was to be exposed; and he avers that he had tendered the.dollar, and demanded a conveyance before filing this bill.
The defendants, in general terms, deny all fraud or interest of the sher iff in the matter. They admit the land was then worth four hundred dollars, and now, a thousand or twelve hundred ; that they went on the land on the l4thof February 1811, with nootherperson in company, and on some part of it, it being all woods, and one part as public as another, the sheriff cried off the land to the purchaser, who bid one dollar, and no person being there to bid against him, it was sold to him, and he paid the dollar. They admit no public notice of the sale, except that the sheriff, at Russellville, that morning proclaimed his intention of selling the land that day, and invited others to go and bid, but could get no person to go with him to the sale, the day being cold, except the appellee, Frazier, who made the purchase. They admit they parsed the house of Gist, the appellant, and called upon him. Frazier states, that he neither had, nor heard any conversation with Gist, in that interview, about the land. But *120 Stewart, the sheriff, and Gist, had some conversation! together, which he, Frazier, did not hear; that they froni the house of Gist to the land, and there, about twelve or one o’clock, effected the sale, on a spot on the premises which they cannot designate. In all these particulars, Stewart agrees; but states that he had promised Gist to call upon him before the sale, which he was authorised to make on that day, by the writing hereafter recited ; that he accordingly called with Frazier, and took Gist aside, and enquired whether he had the money, and Gist said he had left it with Morehead in town, with directions to pay the executions; but alleges that he liad called on Morehead the day before, and no money was there. He then alleges, that he observed to Gist that he had complied with his promise* of calling upon him before the sale. This is the whole of the interview stated between him and Gist, before he went to effectuate the sale, which he proceeded to do, on going from the house of Gist. Both the appellees rely on the following letter of attorney, executed by Gist, with which they admit the purchaser, Frazier, was acquainted before going upon the ground.
2. “ Whereas, William Stewart, deputy sheriff for Peyton Nolin, S. L. C. has now in his hands, against me, the following executions, to wit: Andrew Caldwell’s,' No. 9'¡0 ; Benjamin Temple’s, No. 784 ; Samuel Caldwell and A. Bu'.ler, No. 520; each, issued from the clerk’s office of the Logan circuit court. Also, under the jurisdiction of the justices of the peace of said county, M’llvain’s, Breathitt’s, Samuel Williams’ and others; and I therefore fully empower, authorise and direct said Stewart, to sell for ready money, on the premises, on the fourteenth of this present month, four hundred acres of land, originally entered in the name of Presley Edwards, adjoining the land I now-live on. Also, on the same day, said Stewart is authorised and directed by me, to sell, on the premises of the above four hundred acre tract, to wit, one thousand acres lying in Hopkins county, Kentucky, patented to Nathaniel Gist. I give this authority and make the request, in the presence of the subscribing witnesses. N. B. Before signed, I directed the above land not to *121 be advertise]^ &c. Given under my hand and seal this 6th day w February, 1811.
HENRY C. GIST, (seal.)
Attest — Jambs Frazier,
Milton Stewart.”
The cause was tried on the bill and answers, and this instrument and one of the executions referred to in it, with a return of the sale thereon, and the court below dismissed the bill with costs.
From this decree, Gist has appealed to this court.
3. From the simple history of this case, if Gist had the attitude of a defendant, resisting the completion of the legal estate, we could have no hesitation in refusing to compel him to convey. But as there is in such cases an advantage in being defendant, and courts of equity will then refuse to effectuate in many instances, what they would not set aside on the prayer of the opposite party; the case, from the barrenness of the testimony, presents more difficulty. In it, however, several weighty facts are discovered, which raise a violent presumption that others exist, not expressly proved ; and although the chancellor may feel himself at a loss how to reason upon the matter, yet he must feel, a strong repugnance to leaving things as they are, and must be sensible that Frazier holds this land against conscience and every due sense of equity.
It is true, that inadequacy of price is not perse, in general, a sufficient reason for setting aside a contract. But still, when it is combined with other circumstances, it frequently has great weight, and in many cases may destroy the presumption of fairness j and demand of the party resisting relief, a full explanation of the reasons why it was so small. In this case it does not stand alone. To tell that this tract of land sold at four hundred times less than its confessed value, at once excites surprize. But to add, that the sale was made by one individual as an auctioneer, disqualified from buying himself, hid perhaps, in the thickets of the forest, in some unknown and indescribable retreat, attended by one individual, on a cold, day, which individual was at liberty to bid either one dollar or one cent, as he might choose, without the probability of competition, and that there, before this individual and the surrounding trees, the auctioneer *122 should go through the singular formality of proclaim; instlie saIe> and requiring more bids, the relation' shocks the moral sense at once, and extracts the uni. versa! decision of all men, that the thing itself is monstrous, and ought not to stand. Still add to this, that they had just went from the house of the unfortunate individual, whose estate was thus sacrificed, and where, accoi ding to thejr own admissions, neither seller nor buyer, ever intimated to him, that they were then retiring to the woods, for the purpose of performing this solemn ceremony of selling his' estate there. All these facts raise such a violent presumption of fraud and collusion, that we ought at once take them, if nothing further appeared, calculated to wipe turpitude from the transaction, and decide that it ought to be redressed.
But here, we ai;e met by the writing or„letter of attorney ol Gist, relied upon as amply sufficient to authorise all this, and are told, that he, himself, was the immediate cause of it. On this instrument, lies the greatest difficulty. By it, the sheriff was allowed to lay aside the garb of an officer, andsell as an individual,' or to couple and mix both the characters of officer and private agent, and thus dispose of the land. Under' what circumstances, or by what means the officer obtained such a singular paper, no witness, explains. This much, however, is apparent from the instrument itself. The person to whom it was given, was a sheriff. and the person who gave it, was considerably in debt, and then subject, to the power of several executions held by that.officer. The attitude of the parties to a contract, in relation to each other, has often made a conspicuous figure with the chancellor, in testing the soundness of the transaction. Catching bargains have been vacated ; ignorant and inexperienced heirs have been relieved from contracts with their guardians or patrons; and in such cases, contracts have been annulled, which were only superinduced by address and persuasion, where the more experienced party had the advantage of strong influence over the mind, and possessed the confidence of the other. But the possession of the confidence of, and influence over an individual, does not address i'self more strongly to the mind, and more, or as much endanger its subject, as the posses. sionof power over the person or fortune of anindividual *123 ¡does. Hence the advantage given to sheriffs, armed with process, has tempted them to extortion, and made the subjects of that process, the victims of oppression. Hence statutes have been made to inflict penalties arid vacate contracts made under such circumstances, and the chancellor, without any statute to give him express directions, has watched with a jealous eye over such .cases. We do not say that this letter of attorney, is within the letter of any statute. But certainly it is within the spirit of what is forbidden in our code. Here, it is evident, that Gist felt the pressure of these executions; that he wished to quiet the officer, and for a while, at least, to suspend their effects. To this was added, probably, the fond but delusive hope, that he would be able to extricate the estate from the grasp of the law7. We cannot but suppose, from the face of the instrument itself, that his confidence was so great in his being able to relieve himself from the pressure, that he supposed he could npt fail, or that he was for á moment acting irrationally, and was not self possessed ; or that he was so pressed that he was ready to do any thing, to get clear of the officer. For the second, of these suppositions there is no ground. The first and last are rational inferences.
2 Dig. 113§,
On the other hand, what rational or pure motive can be imputed to the officer, in obtaining such a páper ? He had authority t® seize and sell. Why then require authority to do it ? Why ask the liberty of selling the land in the woods, in cold weather, when he could do it at the court house, from which he rode some distance ? And why ask to dispense with the publication of the sale by advertisement, if it w7as not with a design of sacrificing it to. the debtor, and as a boon of speculation for some of his friends ? How can it b® supposed that be could procure the complainant to dis. pense with all the guards which the law had placed around the estate of the debtor to prevent its sacrifice, if he did not avail himself of the attitude of pow7er, Which he possessed over him. to induce him to do so? A statute in force in this country, forbids an officer from taking any bond from a person in his custody, .except those of an official character, or conditioned to pay the debt. This is to prevent extortion. And although the incarceration of the body present? a more *124 powerful temptation to a distressed debtor, to buy bis liberty, yet the grasp of his estate by a fieri facias, is not without a strong influence ; and contracts extorted from debtors, injurious to their interests, under such circumstances, have been often and almost universally set aside by the chancellor. And although the present instrument may notbestiled a contract, yet it is such a total dispensation of the duties of the officer on the one hand, and such an annihilation of the legal rights and privileges of the debtor op the other, that it must have been procured by the officer tailing an undue advantage of the attitude in which he was placed, and was as injurious to the interest of the debtor as any extorted sacrifice by contract could be. And it mu“< have been intended thus to use it, or so much sileu(- wo Id not have been observed at the house of the del rid nt, on the morning of the salé, which they were t. en going into the woods to make, when no rational man could have supposed that the auctioneer and one bidder was retiring to the woods to make a public sale. This letter of attorney to the sheriff, and the sale under it, cannot therefore, obtain the sanction of this court. And as to the purchaser, Frazier, he is affected with all the consequences. He was acquainted with the letter of attorney, and participated in every act which carried it into effect.
The decree must, therefore, be reversed with costs., and a decree below be entered, directing the defendant, Frazier, to release and convey the title back to Gist,, and to surrender the possession of said four hundred acres of land by the patent boundary, after having his one dollar tendered back to him. Said conveyance to be with warranty against himself and heirs and all claiming under him.